2 Wh 313
33 SC ²426

[PHILADELPHIA, FEBRUARY 13, 1837.]

## BEEHLER *against* STEEVER.

### IN ERROR.

1. In an action of slander, evidence of the size and strength of the defendant is not admissible.

2. In such action, evidence may be given of the number of the plaintiff's children, and the state of his family.

3. Any defence, which does not amount to a justification, may be given in evidence, in mitigation of damages, in an action of slander.

4. The rule of court which requires ten days' notice to be given of special matter intended to be given in evidence, does not apply to evidence of facts, which go in mitigation of damages in slander.

5. In slander, for charging the plaintiff with conspiring, with others, to cheat the defendant, it was *held*, that evidence was admissible in mitigation of damages, to prove that the plaintiff was the clerk of A.; that A. was a creditor of B., who had failed, and made an assignment of his property, in which A. was preferred, so as to absorb the fund; that the defendant had, at the instance of the plaintiff, endorsed notes for A., which he was obliged to pay, and was not preferred in the assignment; that the defendant had a conversation with A. within forty-eight hours before the words were spoken, in reference to this assignment; and that the slanderous words were spoken in consequence of the assignment, and in reference to it.

(Beehler *v.* Steever.)

6. Words may be actionable, although the expressions are " I *believe* that," &c.

7. Where the words laid in the declaration were, " You have conspired with others to cheat me," &c., and the words proved were " I *believe* that you have conspired with others," &c. it was *held* that this was not a fatal variance.

On a writ of error to the District Court for the City and County of Philadelphia, it appeared that Henry D. Steever brought an action on the case for slander, against Tobias Beehler, to the term of September, 1833.

The first count of the declaration charged the defendant wi*t* speaking the following words to the plaintiff: " You are a villai. and a swindler, and you conspired with others to cheat me." Th( second count laid the words to be spoken of the plaintiff, " *He* is *a* villain and a swindler," &c. In the third count the words were thus laid ; " You are a cheat, a villain and a swindler, and conspired with others to cheat." In the fourth count the words were, " You are a damned villain and a swindler, and you conspired with others to cheat and swindle me out of my money."

At the trial of the cause before Pettit, President, on the 21st of November, 1836, a witness named Vantine was produced on the part of the plaintiff, who testified as follows :

" Some time, I think in the middle of July, 1833, or rather the latter part of it, as I was sitting at my breakfast, I heard a very loud talking in the street. I then went to the door and looked across the street, and saw Mr. Steever and Mr. Beehler at the corner of Race and Third streets, at Sellers & Davis's store. I then went down to the corner, and saw Steever and Beehler standing both on the pavement, near the sill of the door. Mr. Beehler was shaking his fist about; appeared to be very much agitated, and calling him ugly names; among the rest, he said, " you are a liar and swindler, and a damned villain, and you have conspired with others to cheat me out of my money;" these are the very words; at the same time shaking his fist under his nose; I thought he was going to strike him; appeared to be in a great passion; he was talking constantly; he was near to Steever when he spoke the words to him; had his sleeves rolled up; I stood there about five minutes; he called him those names twice in my hearing, whilst I was there; I then left, and went to my shop, which is the fifth door above Race, in Third street; there were people collected together, from thirty to fifty, some from Mayland's factory, opposite ; I could not hear any thing Steever said, if he spoke; when Beehler advanced, Steever retreated ; Beehler and Steever were both there when I left ; when I left, the croud had not separated; Mr. Sellers appeared to be trying to pacify Beehler; I could not hear what he said."

(Beehler *v.* Steever.)

The plaintiff's counsel then asked the following question of the witness; "What is the general size and build of Mr. Beehler's person?" to which the defendant's counsel objected; but the learned judge allowed the question to be put, and the defendant's counsel excepted. The witness answered, " Beehler is a very stout man, stout built; you will not see many men as stout. It was between seven and eight in the morning; the two houses adjoining me are fifteen feet each, and Mayland's factory is three times that, I suppose; my house is the third house, and fifth door; a cartway between the tavern; I was sitting in the room back of my shop when I heard the noise; it was very warm weather; I did not know whose voice it was, till I went to the door, and I found it was Beehler's voice; I think Steever was at this time a clerk in Mr. Richards' compting house; Beehler is a sugar-refiner; carried on business in Ann, above Vine street, and below Third; it is a large establishment."

A witness named Halliday testified to the same words as the preceding witness; and in answer to a similar question, which was also excepted to, said, " Beehler was about six feet high, and strong or stout in proportion."

Another witness named Sellers, swore, that as near as he could recollect, Beehler said, " I *believe* you are conspiring with others, to cheat me out of my money." On his cross-examination he said, " I took the reference of the words spoken by Beehler at our store, to be to some money transactions between him and M'Caraher; he referred to some debt due by M'Caraher to him; I did not know of any assignment of M'Caraher preferring Richards; Beehler is in Europe now; Beehler appeared, at the time in the store, to listen to what I said; did not speak in that tone of voice as before."

The plaintiff's testimony being closed, the defendant's counsel offered a witness named Eckstein, to prove that the defendant was in the habit of signing notes for the accommodation of Alexander M'Caraher; that it was through the influence of the plaintiff that this was done, and that the notes were unpaid at the time of M'Caraher's failure; which evidence was objected to on the other side, and rejected by the court.

The defendant also produced as a witness Mark Richards, who, after testifying to matters not important now, was asked the following questions:

" Had you any conversation, the day before the occurrence at Sellers and Davis's store, with Beehler respecting the assignment of A. M'Caraher?"

Again. " Had you any such conversation within forty-eight hours of the occurrence?"

Again.  " Was Beehler a creditor of A. M'Caraher ?"

Again.  " Was Steever, the plaintiff, in the habit of drawing notes for, and assisting A. M'Caraher in raising money ?"

Again.   " Did Beehler express dissatisfaction with the order in which the creditors of A. M'Caraher were preferred in his assignment ?"

The plaintiff's counsel objected to these questions, and the court refused to allow them to be put.

The plaintiff's counsel on the cross-examination, asked the following question, ' What family has the plaintiff, and how many children has he ?'   The defendant's counsel objected, but the court allowed it to be put; and the witness answered that the plaintiff had three children, that he got his living as a clerk, or perhaps occasionally acted as an arbitrator, and all would depend on his good character.

The defendant's counsel then offered in evidence, in mitigation of damages, the assignment of A. M'Caraher, dated July 19th, 1833, to Mark Richards and E. Vansyckle ; the plaintiff having been stated to be the confidential clerk of the former; to show such a disposition of M'Caraher's property by the assignment, as was injurious to the defendant and likely to produce loss to him ; and that Mark Richards the assignee, was so largely preferred in the assignment as a creditor, as probably to absorb the funds of the estate.   The learned judge however, refused to permit this evidence to be given.

The defendant's counsel again offered the testimony of Eckstein, and proposed to put the question to Richards, before mentioned, but the court again rejected them.   To all which decisions the defendant excepted.

The evidence having been closed on both sides, the counsel for the defendant requested the judge to charge the jury as follows :

1. " That none of the words stated in the declaration are under any circumstances actionable, except the words " you," or " he" " conspired with others to cheat me."

2. That if the jury find for the plaintiff, no damages can be given, except for those words which are actionable ; and that the words having been spoken in the heat of passion, and an offer of an apology having been promptly and repeatedly made, are strong circumstances in mitigation of damages.

3. That if the jury believe from the evidence, that the words used by the defendant were as stated by Mr. Sellers—" I believe you are conspiring with others to cheat me out of my money"—these words are not actionable, and there is a variance between the words as laid and as proved, and the verdict ought to be for the defendant.

4. That if the jury believe, from the evidence, that the words were

(Beehler *v.* Steever.)

spoken by the defendant in the heat of passion, and merely as general abuse, and were neither intended by him, nor understood by the bystanders as charging the plaintiff with having committed an indictable offence, but referred merely to the defendant's belief that the plaintiff was privy to, or had influenced Mr. M'Caraher, in making his assignment, to provide for Mark Richards, and others, creditors, in preference to the debt due to defendant for accommodation notes lent by him to M'Caraher, then the verdict ought to be for the defendant."

The judge charged the jury as follows :

" This is an action on the case for slanderous words. The plaintiff alleges in his declaration that the defendant falsely and maliciously uttered the following words, addressed to the plaintiff:

' You are a villain and a swindler, and you conspired with others to cheat me.'     And in another count—

' You are a damned villain and a swindler, and you conspired with others to cheat and swindle me out of my money.'

One witness, Mr. Vantine, says he twice heard the words, ' You are a liar and swindler, and a damned villain, and you conspired with others to cheat me out of my money.'

Another witness, Mr. Halliday, testifies to the words, ' You are a liar, a damned scoundrel, and a swindler, and you conspired with others to cheat me,' as nearly as the witness could recollect ; and the witness added that the defendant repeated the charge more than once.

So far it would seem that the words as laid were substantially and almost literally proved ; and if the jury adopt as true the testimony of these witnesses, this I understand is not denied.

Another witness, Mr. Sellers, testified to the words, as far as he could recollect them, " You are a liar, and I believe you are conspiring with others to cheat me out of my money."     Throwing out of view for a moment the words swindler and villain, which are in the plaintiff's declaration, and which by themselves would be mere words of opprobium, in which the vulgar are privileged to indulge ; the other words as laid, ' you conspired with others to cheat me out of my money,' are actionable in themselves ; conspiracy to cheat being a crime involving moral turpitude, and punishable by indictment, and the imputation of such a crime being actionable, (3 *Serg. & Rawle*, 258.)     No damages can be given except for the actionable words. This being the *prima facie* view of the case, the other words come into operation as mere epithets, having no other effect than as tending to show the state of mind in which the actionable words were uttered.     In this view they may possibly aggravate the character of the actionable words.

These remarks answer the first and second of the points submitted in writing by the defendant's counsel, to be charged upon by the

(Beehler *v.* Steever.)

court, excepting so much of the second point as relates to the heat of passion, and an offer of an apology; in regard to which I will say a few words presently.

The only other witness examined was Mr. Richards, who was called by the defendant's counsel. The jury will recollect his testimony with that of the other witnesses.—From the whole, the jury have an opportunity of forming a judgment in regard to the situation and station of both plaintiff and defendant, and in relation to the time, place, and circumstances under which the words were uttered, and also to the matter of the alleged offer of an apology. The plaintiff claims damages. Before making a brief remark or two on that topic, which I shall do without encroaching upon the province of the jury, let us look to the grounds of the defence.

1. On legal grounds—It is said ' that if the jury believe from the evidence that the words were spoken by the defendant in the heat of passion, and merely as general abuse, and were neither intended by him, nor understood by the bystanders, as charging the plaintiff with having committed an indictable offence; but referred merely to the defendant's belief that the plaintiff was privy to, or had influenced M'Caraher in making his assignment to provide for Mark Richards and other creditors in preference to the debt due to the plaintiff, for accommodation notes lent by him to M'Caraher—then the verdict ought to be for the defendant.'

The first branch of this position ending with the words " indictable offence," is true as a general proposition; but some explanation becomes necessary. Where the words are actionable of themselves, it must be satisfactorily shown to the jury that they were not used and not understood in an offensive sense as imputing the crime. It is not enough that a single witness who may have happened to know more of the parties than others of the individuals who heard the words, now at the time of the trial, gives his opinion as to their meaning. The true question is what was understood at the time, and what might have been reasonably understood by the hearers. The words should be understood in court as all mankind would understand them. They ought not to be taken on the trial differently from what all mankind would understand them out of court. (3 *Serg. & Rawle,* 261.)

Again, as to the second branch of the defendant's fourth point. If there had been an express reference in words to a specific pecuniary loss, and an allegation of cheating by the party alone, the whole charge explaining itself at the instant, and showing no indictable offence whatever, no action would lie. But the case might be different where a defendant, referring to such a pecuniary transaction, made the charge of a conspiracy with others to cheat; for that which would not be criminal, if done by the individual, might become so, if performed by means of a conspiracy or combination with others. Further than this—where the words in themselves

(Beehler *v.* Steever.)

unexplained at the time of their being uttered, do impute an indictable crime of moral turpitude, there is no principle of law which will authorise the Court to say, that the verdict ought to be for the defendant. And as to an independent extraneous interpretation, or glossary of the words, the modern and true rule is thus stated by Judge Duncan in the case of *Eckert* v. *Wilson,* (10 *Serg. & Rawle,* 64) :—" That no subsequent explanation given on the trial, showing a reference to a transaction not indictable, can shield the slanderer from the whole texture of these words, intrinsically considered as they ought to be, and explained as they appeared to be by the time and manner of speaking them."

The third point submitted by the defendant, will now be better understood than if noticed before the fourth. It is for the jury to determine, whether that to which each of the three witnesses testifies, is true, without contradiction by any other witness; or whether there is a contradiction. It is in evidence that the denunciations made by the defendant, were repeated.

The jury are not restrained from the conclusion, that each of the varied forms of language was used. If that view be adopted, and it is the view upon which the plaintiff's counsel argued the cause, then the answer to this third point becomes unimportant. Should a different view, however, be taken, and the jury concur in the suggestion, that the only words used were those stated by Mr. Sellers, then it would be for the jury, considering the time, place, and circumstances of the utterance, and the tone and manner of the defendant, to decide whether the criminal charge laid in the declaration, was made by the defendant or not. The mere form of expression would not require the Court, in point of rigid law, to exclude the case from the consideration of the jury. It would not be for the Court to pronounce peremptorily, that there was such a variance as to require a verdict for the defendant. This point was proposed to me in writing, just as I was about to charge the jury; and though it may have been before adverted to by counsel, yet it is due to candour, that I should add, that I did not understand the cause to have been argued on either side, as if this point were material, or as if a charge on it was expected.

With the principles before stated in view, the jury will decide, whether their verdict shall be for the plaintiff, or for the defendant. If for the plaintiff, then there remains a very important part of your duty. The question of damages is for the jury. If the plaintiff has sustained an actual injury, the jury may award him compensation. Outrage to the plaintiff's feelings and peace of mind may be considered. Trouble, inconvenience, expenses, loss of time in seeking redress, may be taken into the account. The jury may sometimes give damages to deter a defendant, and others from similar misconduct, by correcting the defendant, especially in cases of perseverance in the slander or justification of it. This should be done cautiously,

however, and only when strong circumstances demand it. The jury must exercise a prudent judgment in each case. But the defendant says here, that the damages, (if any) should not be high; and this brings us to the defence secondly in point of fact."

[The judge here referred to the testimony of Mr. Sellers and Mr. Richards upon the subject of an offer of a compromise, and stated the view which counsel on each side had taken of this evidence, and then proceeded as follows:]

" Certainly an outrage persevered in, deserves more severe reprehension than one retracted; expressions of sorrow, and an offer to compromise, ought to be carefully weighed by the jury. Though they do not wipe out the offence, and relieve the party entirely from the claim for damages, yet it is the province of the jury to say, what effect is to be given to the circumstances. While, therefore, I would advise the jury to regard this matter as worthy of serious consideration, with a view to a mitigation of the damages, yet the precise degree of strength which belongs to it, is for their own determination.

The violent temper of the defendant has been referred to on both sides. As to general bad temper, the law will not recognize it as a justification. The jury will judge of the effect of the testimony, after having heard all the arguments of counsel.

Again, the defendant's counsel alleged, that the defendant spoke the words in the heat of passion, and while smarting under a severe pecuniary loss. The connexion between defendant and M'Caraher —between M'Caraher and Mr. Richards—and between Mr. Richards and plaintiff, has been referred to. The connexion between the plaintiff and defendant, as to any business, is not very clear; but these matters have been adverted to.

The law makes allowance for human frailty, for a sudden heat of passion, and provocation; but it will not permit a justification of a slander, nor even a mitigation of damages upon a principle of revenge. If a man has provocation, and has time for reflection, it is his duty to reflect. It is agreed on all hands, that nothing occurred that morning, even as to M'Caraher. The law will not extend its indulgence for a violation of its obligations to him, who sleeps upon his provocation. It gives one charged with slander, an opportunity of pleading a justification, and making good his words. If he will not take that course, the provocation must be fresh to entitle him to the favour of the law. Then, as to the amount of damages. Though this point belongs peculiarly to the jury, yet I may remark, that if you find for the plaintiff, you should look well to your verdict.

While it does justice to the plaintiff and the public, let me advise you to take care, that it does not show passion, or prejudice, or undue excitement; let it be such as you can reflect upon with satis-

(Beehler v. Steever.)

faction hereafter; such as will not be regarded as startling or extravagant, but will exhibit calmness, and the exercise of a sound discretion and judgment. As to the alleged and reputed wealth of the defendant, let me caution you not to be misled on this point. It is not often that there is danger of too small a verdict in cases of this description. Where a decided and actual injury has been inflicted, and so perseveringly pursued, as to require unequivocal punishment, and there is no other mode of inflicting it, than by the assessment of damages, a wide scope may be taken by the jury. Each case, however, should be graduated by its own peculiar circumstances. If the jury can do full justice to the plaintiff and to the community, without taking so wide a range, then the mere fact of a man's possessing property, whether inherited, or earned by his own industry, ought not to induce a jury to do more than that full justice, looking to the whole case, requires. A poor man, it is true, may feel a given verdict more than a rich one; and a measure of damages, which may be sufficient to do what is right in regard to one, may be insufficient in regard to the other. But after all, the justice of each case must be the object to be obtained by the verdict of the jury."

The jury found for the plaintiff, with $2550 damages; and the defendant removed the record to this Court, and assigned the following errors:—

1. " Because the court below erred in admitting evidence of the general size and build of the defendant below, and of what family, and how many children the plaintiff below had.

2. Because the court below erred in rejecting the evidence of Samuel Eckstein, a witness on behalf of the defendant below, on whose being sworn, it was proposed to be proved by him, in mitigation of damages, that the defendant below was in the habit of signing notes for the accommodation of a certain A. M'Caraher; that it was through the influence of the plaintiff below that this was done; and that the notes were renewed by the same influence; which notes remained unpaid at maturity, and which maturity occurred after the assignment of said A. M'Caraher had been made.

3. Because the court below erred in over-ruling the following questions, put by the counsel of the defendant below, to Mark Richards, a witness on his behalf, to wit :·

" Had you any conversation, the day before the occurrence at Sellers and Davis's store, with Beehler respecting the assignment of A. M'Caraher ?"

Again. " Had you any such conversation within forty-eight hours of the occurrence ?"

Again. " Was Beehler a creditor of A. M'Caraher ?"

(Beehler *v.* Steever.)

Again.   " Was Steever, the plaintiff, in the habit of drawing notes for, and assisting A. M'Caraher in raising money ?".

Again.   " Did Beehler express dissatisfaction with the order, in which the creditors of A. M'Caraher were preferred in his assignment ?"

Which evidence of Samuel Eckstein was offered, and the said questions put, both before and after the offer to give in evidence the assignment of said A. M'Caraher, and as alleged, erroneously rejected.

4. Because the court below erred in rejecting the assignment of A. M'Caraher, offered in evidence by the counsel of the defendant below, dated the 19th of July 1836, to Mark Richards and E. Vansyckel, (the former of whose confidential clerk the plaintiff below was stated to be in the opening of the plaintiff's counsel) in order to show, (prout the said assignment) in mitigation of damages, such a disposition of the said A. M'Caraher's property, by said assignment, as was injurious to the defendant below in this case, and of such a character as probably to produce loss to him ; that the said M. Richards, in whose employment the said plaintiff below was in manner before shown, and who was an assignee under the said assignment, was so largely preferred therein as a creditor, as probably to absorb the funds of the estate.

5. Because the court below erred in not charging the jury as requested by the defendant's counsel in the first of the points, upon which they requested the judge to charge the jury, that none of the words stated in the declaration are, under any circumstances, actionable, except the words " you," or " he conspired with others to cheat me :" but, on the contrary, that the words (in the view he stated of the case on this point) may possibly aggravate the character of the actionable words.

6. That the court below erred in stating to the jury, in answer to the first part of the defendant's counsel's fourth point, that it is not enough that a single witness, who may have happened to know more of the parties than others of the individuals who heard the words, now at the time of trial, gives his opinion as to their meaning ; and that the judge did not give a distinct answer to the rest of the said fourth point of the defendant's counsel ; and his answer thereto was too vague, and did not give such instructions to the jury as the said counsel had a right to require ; and, indeed, what he said, was not an answer thereto.

7. That the judge below erred in his charge to the jury upon the third of the points of the defendant's counsel, in not stating to them, that, if they believe the words used by the defendant, were as stated by Mr. Sellers, the words in the said point mentioned, were not actionable, and there is a variance between the words as laid and proved, and there ought to be a verdict for the defendant ; but said

(Beehler v. Steever.)

that the mere form or expression would not require the court, in point of rigid law, to exclude the case from the consideration of the jury, and it would not be for the court to pronounce peremptorily that there was such a variance as to require a verdict for the defendant, and then telling the jury, that with these principles in view, [those herein stated throughout his answer on this point] they would decide whether the verdict ought to be for the plaintiff or defendant.

8. Because the judge below, in charging upon the question of damages, told the jury that trouble, inconvenience, expenses, loss of time in seeking redress, might be taken into the account, when there was in fact not a particle of evidence given of any expenses, nor of how much loss of time the plaintiff had sustained.

9. That the judge below erred in charging the jury, that " the jury may sometimes give damages to deter a defendant and others from similar misconduct, by correcting the defendant, especially in cases of perseverance in the slander, or justification of.it."

10. That in charging the jury further on part of the defendant's counsel's second point, (as to the words being spoken in the heat of passion, and as to the offer of apology) the judge did not tell the jury that these were strong circumstances in mitigation of damages, as requested by the said counsel; and as to the former, (the words being spoken in the heat of passion) said that general bad temper the law will not recognise as a justification, and the jury will judge of the effect of the testimony, after having heard all the arguments of counsel. Again, that the defendant's counsel allege that the defendant spoke the words in the heat of passion, and while smarting under a severe pecuniary loss; and after observing that the connexion between the plaintiff and defendant, as to any business, is not very clear, the judge said that the law makes allowance for human frailty; for a sudden heat of passion and provocation; but it will not permit a justification of a slander, nor even a mitigation of damages, upon a principle of revenge; that the law will not extend its indulgence to him who sleeps upon his provocation; the provocation must be fresh, to entitle him to the favour of the law.

11. That the words laid in the third count of the plaintiff's declaration, are not actionable, being laid as a conspiracy to cheat generally, and therefore not sufficiently explicit."

Mr. *Meredith* and Mr. *Keemle*, for the plaintiff in error, cited *Jackson* v. *Adams*, (2 *Bingham*, *N. C.* 402; 29 *Eng. Com.-Law Rep.* 373.) *Peake's N. P. C.* 4. *Pinfold* v. *Wescott*, (5 *Bos. & Puller*, 335.) *Eckert* v. *Wilson*, (10 *Serg. & Rawle*, 54.) *Johnson* v. *Tate*, (6 *Binn.* 121.) *M'Connell* v. *M'Coy*, (7 *Serg. & Rawle*, 226.) *Barnes* v. *Holloway*, (8 *Term Rep.* 150.) *Hays* v. *Brierly*, (4 *Watts*, 392.) *Thompson* v. *White*, (4 *Serg. & Rawle*, 135.) *Peterborough* v. *Mordaunt*, (*Ventris*, 59.)

(Beehler v. Steever.)

Mr. *Miles* and Mr. *C. Ingersoll*, for the defendant in error, cited *Rue* v. *Mitchell*, (2 *Dallas*, 60.) *Starkie on Slander*, 241. *Andres* v. *Koppenheiffer*, (3 *Serg. & Rawle*, 257.) *Henry* v. *Sims*, (1 *Wharton's Rep.* 187.) *McClelland* v. *McCalmont*, (14 *Serg. & Rawle*, 462.) *Kennedy* v. *Gregory*, (1 *Binn.* 89.) *Smith* v. *Buckecker*, (4 *Rawle*, 295.) *Morris* v. *Duane*, (1 *Binn.* 90.) *Waithman* v. *Weaver*, (*Dow. & Ryl. N. P. C.* 10 ; S. C. 16 *Eng. Com. Law Rep.* 412.) *Avery* v. *Ray*, (1 *Mass. Rep.* 12.) *Cushman* v. *Waddell*, (1 *Baldwin*, 57.) *Cheetwood* v. *Mayo*, (5 *Munf.* 16.) *McAlexander* v. *Harris*, (6 *Munf.* 465.) *Kleintrobb* v. *Prescott*, (4 *Watts*, 301.) *Coates* v. *Roberts*, (4 *Rawle*, 100.) *Geiger* v. *Welsh*, (1 *Rawle*, 349.) *Miller* v. *Miller*, (8 *Johns. Rep.* 64.) *Oram* v. *Peake*, (2 *Blacks. Rep.* 961.) *Stretch* v. *Wisedome*, (*Cro. Eliz.* 348.) *Colman* v. *Godwin*, (3 *Douglas*, 90 ; S. C. 26 *Eng. Com. Law Rep.* 43.) *Deford* v. *Miller*, (3 *Penn. Rep.* 106.) *Kennedy* v. *Lowrie*, (1 *Binn.* 393.) *Tipton* v. *Cauley*, (3 *Watts*, 90.) 3 *Chitty*, 94, 615. *Purdon* v. *Stacey*, (5 *Burr.* 2698.)

The opinion of the Court was delivered by

Rogers, J.—This is an action of slander, for falsely and maliciously uttering the following words : " You are a villain and a swindler, and you conspired with others to cheat me." And in another count, "You are a damned villain and a swindler, and you conspired with others, to cheat and swindle me out of my money." The plaintiff gave in evidence the speaking of the words laid in the declaration, with evidence of the violent conduct of the defendant, and then asked the following question: " What was the general size and build of Mr. Beehler's person?" The court admitted the testimony, and of this the defendant complains. It is difficult to perceive what connection evidence of this description can have with an action for slanderous words ; and accordingly it is admitted, that, in general, such evidence is inadmissible. But it is said this case forms an exception ; but I have been unable to discover any thing peculiar in its circumstances, which exempts it from the general rule. The evidence is not merely irrelevant, but, from its character, it is calculated to be highly prejudicial to the defendant, by influencing the feelings and passions of the jury, by highly coloured representations of the herculean strength and gigantic size of the defendant. In the hands of skilful and eloquent advocates, we may readily conceive, that topics of this kind may be wielded with great effect. If evidence of the size and general *build* of the defendant's person may be admitted, for the same reason we must enter into a comparative estimate of the bone, sinew and muscle of the respective parties, with a view to test their relative strength, in an action of slander. And if such testimony may be received to measure the damages, there can be no reason assigned why evi-

(Beehler *v*. Steever.)

dence of the size and strength of the plaintiff may not be admitted in mitigation; and this would lead to an inquiry, totally foreign to the issue, and tending, in its results, to mislead and distract the jury. It is difficult to conceive that words spoken may be more or less slanderous or obnoxious to small or excessive damages, merely from the relative strength of the plaintiff and defendant. If this was an action for assault and battery, some reasons might be offered that might avail the plaintiff; but in this action, it seems to me, there was most manifest error in the admission of this evidence.

The last branch of the first error has not been sustained. It is clearly competent to show the number of children, and the state of the plaintiff's family.

The defendant also complains of the rejection of the testimony, embraced in the second, third and fourth errors. That may be included under one head, and was in substance this. The defendant offered to prove that he was in the habit of signing notes for the accommodation of a certain A. M'Caraher, through the influence of Steever, the plaintiff; that the notes were renewed by the same influence; that they remained unpaid at maturity; and this maturity occurred after the assignment of M'Caraher had been made; that the defendant had a conversation with Mark Richards, one of the assignees of M'Caraher, respecting the assignment, within forty-eight hours of the time the words were spoken, in which he expressed his dissatisfaction with the order in which the creditors were preferred in the assignment; that he, Beehler, was a creditor of A. M'Caraher; and that in the assignment, which was also offered in evidence, dated the 16th of July, 1836, to Mark Richards and E. Vansyckel, such a disposition was made of the property of A. M'Caraher, as was injurious to the defendant, and of such a character, as probably to produce loss to him. And that M. Richards, the assignee, who was the uncle and employer of Steever as his confidential clerk, was so largely preferred therein as a creditor, as probably to absorb the funds of the estate; that the debt of Mr. Richards was contracted in the ordinary course of dealing; notwithstanding which, he was preferred over the defendant, who signed the notes of M'Caraher, without value, for his accommodation; that the conversation, in which the words laid in the declaration, were spoken, had relation to the assignment; and that, under the influence of his losses, he used these words at an accidental meeting between him and the plaintiff, Steever.

The evidence was offered, as is expressly stated in the bill of exceptions, in mitigation of damages, and not in justification of the slanderous words.

It was opposed, as is now stated, on two grounds.

1. Because there was no notice given, under the thirty-sixth rule of the District Court, which requires ten days notice of the special matter intended to be offered on the trial under the general issue.

(Beehler *v.* Steever.)

2. Because the facts thus offered, cannot be given in evidence, in mitigation of damages.

As to the first, it is by no means clear that this objection was taken at the trial; but if it had been, it cannot avail the plaintiff. The rule, in actions of slander, notwithstanding some loose expressions to the contrary, is, that any defence, which does not amount to a justification, may be given in evidence under the general issue, in mitigation of damages. A justification must either be pleaded specially, or, according to a very general practice in this state, may be given in evidence under the general issue, on notice given to the opposite party, ten days before the trial. The only effect of the rule in the District Court would seem to be, to substitute notice of a justification, rather than put the party to the trouble of drawing out a formal special plea. But it was not intended to require that notice should be given, of facts which go in mitigation of damages merely.

But can the evidence be given in mitigation of damages ?—is the next question.

Malice is of the very essence of an action of slander, and as a general rule, any thing which shows the existence of the malice on the one hand, and the want of it on the other, or the degree and extent of the malice, may be laid before the jury, and has a material bearing as the case may be, either on the maintenance of the suit, or on the amount of the damages. And such allowances have been made for the infirmities of our nature, that in *Knobel* v. *Fuller*, (2 *Peake Ev.* 287,) which case is referred to, and approved in *Morris* v. *Duane*, it was ruled, that the defendant may in mitigation of damages, prove, on the general issue, such facts and circumstances, as show a ground of suspicion, not amounting to actual proof of the plaintiff's guilt. If a person truly believes, although mistaken in point of fact, that he has a good cause, and in a moment of irritation and passion makes a criminal charge against another, he is surely not as culpable as where the accusation is made without any reason, either actual or supposed. The malice is much greater in the one case than the other, and the party is liable to be mulcted in damages to a much greater extent; for the actual injury which the plaintiff's character has suffered, is not the only criterion of damages, but the jury may take into their estimate the wickedness of the plaintiff in making an accusation against his neighbour without any cause for suspicion. On the same principle it has been decided, that a person may give in evidence that another told what he related; and this even when the slander is spoken without reference to the informer. *Kennedy* v. (*Gregory*, 1 *Binn.* 90.) And in *Morris* v. *Duane*, in a note to 1 *Bin.* 90, Chief Justice TILGHMAN, at Nisi Prius, permitted the defendant to prove in an action for a libel, a writing purporting to be the copy of an anonymous letter, which from certain marks on the back of it, was inferred to have been in the possession of B. F. Bache, and

upon his death to have come to the defendant, who succeeded him as editor of the Aurora, in which the libel was published. " The effect, (says the Chief Justice,) of any evidence which a defendant may offer is with the jury, the competency with the court. The question in this case is, whether the defendant is entitled to offer to the jury this letter, with the explanations for any legal purpose connected with the cause. It certainly cannot be offered to prove the plea of not guilty, and it is no legal justification. But still, is it not material? Can it be that like damages should be given against two defendants, one of whom received his information from such sources as were entitled to a certain degree of credit, while the other devised it of his own wicked imagination? I think it cannot. Such evidence certainly goes to the degree of malice, and must weigh with the jury according to the circumstances which attended it. Whether these circumstances are such as ought in reason to mitigate the damages, they will determine." This was not a hasty decision of the Chief Justice, and has been repeatedly recognised in subsequent cases. Its bearing on this case is most obvious. The evidence was offered in mitigation of damages, by showing the degree and extent of the defendant's malice; for it is some extenuation of his conduct when we consider the occasion of his speaking the slanderous words, the transaction to which he alluded, and of which he had so much reason to complain; the connexion which Steever had with the parties to it, and the share he had in the transaction; the influence he exerted in procuring the accommodation of Beehler for M'Caraher, and in acting in some measure as his general agent in procuring accommodations for him. Nor can the same blame be attached to him as if he had devised the charge without cause or shadow of suspicion. Although there is no proof of the actual participation of Steever in procuring the assignment, or of his agency in inducing M'Caraher, over whom Beehler naturally thought he had some influence, to prefer his uncle and employer, for a debt which was not particularly meritorious, in exclusion of Beehler who was an endorser, and as such, usually preferred in such assignment; yet there were circumstances connected with the transaction, which might have caused suspicion of some extraordinary influence in producing such a state of things, in a mind even more enlightened than the defendant's appears to have been.

But it is said that forty-eight hours had intervened between the conversation and the speaking of the slanderous words, and this is a sufficient reason for excluding this testimony, and for this position the plaintiff relies on *Avery* v. *Ray*, (1 *Mass. Rep.* 12.) *Lee* v. *Woolsey*, (19 *John.* 329.) *Cushman* v. *Waddell*, (1 *Baldw.* 57.) But these were all cases of actions for assault and battery, which depend on different principles. If the defendant had cause to believe in the truth of the charge he made against the defendant, of what consequence is it so far as affects the competency of his testimony,

whether he heard the facts which were the grounds of his belief, forty-eight hours before, or at the very moment of speaking the slanderous words.　This objection was not thought of either in *Kennedy* v. *Gregory,* or in *Morris .*v. *Duane .;* nor has it ever been alleged as a reason for excluding such testimony, that the information on which the defendant relied, was communicated to him some time before the speaking of the offensive words.　In actions for an assault and battery, it may be conceded that the defendant in mitigation of damages, is confined to provocations which immediately precede the assault. It must be so recent, as to afford a fair presumption that the violence was committed under the influence, and during the continuance of excited feeling and passion, and this on a principle of policy which should repress, and not countenance revengeful feeling, nor in any way encourage an appeal to force and violence.　But it is said, that this doctrine as to time was applied to slander in *Beardsley* v. *Maynard,* (4 *Wendell,* 337.)　In that case it was decided, that in an action for a libel, the defendant cannot give in evidence other libels published of him by the plaintiff, not distinctly relating to the same subject; and that the publication of a libel three days previous to the publication of the defendant's libel against the plaintiff will not be received in evidence, in palliation of the offence, on the ground of provocation.　When the passions have had time to cool, redress can only be had by a resort to the legal tribunals of the country ; for no man whose rights are protected by the law, should be the avenger of his own wrong.　And where the previous publication has no no relation to the libel, it should not be received to mitigate the damages.　Nor is there any excuse for a libeller, that the other party has before libelled him.　But the evidence here was not offered on the ground of provocation, but to show that Beehler had some reason to believe in the truth of the epithets he applied to the plaintiff, as affecting the degree of malice in uttering the slanderous words, so as to explain the transaction to which he alluded.　In no case that I have seen, has it been thought material, on the question of the competency of the testimony, that the party has received his erroneous impression, either recently, or at a remote period from the time the charge is made.　In *Beardsly* v. *Lathrop,* the principle is recognised, that if a connection can be traced between the publication of the one as an answer to the other, the former publication is evidence.　The testimony was excluded, expressly because no such connection had been discovered.　And in *Hotchkiss* v. *Lathrop,* in an action for a libel, it was permitted to give in evidence a former publication by the plaintiff, to which the *libel* was an answer, to explain the subject-matter, occasion, and intent of the defendant's publication.　And for the same reason we think this should have been received, as it seems to explain the transaction, the occasion and reason of the offensive charge.　It is also a circumstance of some weight, that the conduct of which the plaintiff complains, occurred

(Beehler *v.* Steever.)

at an accidental meeting, and that immediately after Beehler being convinced of the impropriety of his conduct, he acknowledged his error, and tendered all the amends in his power.

In answer to the errors assigned to the charge: We have examined the charge in connection with the errors, and we can discover nothing, of which the defendant can justly complain; nor is there any thing which has been alleged as error, which requires particular notice, except the answer of the court to one of the defendant's points. The court was requested to charge the jury, that if they believe that the words spoken were, " I believe you are conspiring with others to cheat me out of my money," they are not actionable; and that there is a variance between the words laid and proved, and that the verdict ought to be in favour of the defendant.

It cannot be urged, with any prospect of success, that the words, " I believe you are conspiring with others to cheat me out of my money," are not actionable. The question has been too often settled, now to admit of doubt. Nor was this point pressed, but the latter branch of the proposition was insisted on. This is a point, not without plausibility, but yet it seems to be settled by authority. In actions of slander, it is only necessary to prove, in substance, the words laid in the declaration; and for the defendant to say, " I believe you are conspiring with others to cheat me," amounts, in substance, to a positive charge, that you are conspiring with others to cheat me. It is equal to a positive averment of guilt; for a man only avers a thing because he is cognisant of it. And this point was so decided in *Miller* v. *Miller*, (8 *Johns. Rep.* 74.) The words laid in the declaration were, " Tina Miller has stole my watch, and Polly Miller has concealed it for her." The proof at the trial was, that the defendant said that his watch had been stolen from him in the plaintiff's bar-room, and that he had reason to believe that Tina Miller took it, and that her mother concealed it. It was held by the court that the words, in substance, were the same, and supported the declaration. The court say, " the defendant made a positive charge that his watch had been stolen in the bar of the plaintiff, and he added, that he had reason to believe that Tina Miller had taken it, and that her mother had concealed it. The assertion that he had reason to believe that the one took, and the other concealed it, is equivalent to the charge that the one stole, and the other concealed it." *Oldham* v. *Peck*, (2 *Bl. Rep.* 961,) is to the same point, where the court held, that to say, " I am thoroughly convinced that you are guilty," is equal to a positive averment of guilt. Besides, so much depends upon the manner in which the words are spoke, that the court were right in saying to the jury, that it was not for them to pronounce peremptorily that there was such a variance as to require a verdict for the defendant.

Judgment reversed, and a *venire de novo* awarded.