# Leitz v. Hohman.

*Slander—Charging a party with crime—Actionable words.*

In case the charge, if true, will subject the party charged to an indictment for a crime involving moral turpitude or subjecting him to an infamous punishment, the words will be in themselves actionable.

*Slander—Innuendo—Province of court and jury.*

In an action for slander where the alleged slanderous words charge an indictable offense, it is for the court to decide whether the words laid in the plaintiff's statement are capable of the meaning ascribed to them by the innuendo, and for the jury to decide whether such meaning was truly ascribed to them.

To charge a butcher with knowingly selling diseased meat whereby his customers are being made sick, is to impute to him an indictable offense, and one involving moral turpitude in the ordinary and well understood meaning of these terms; it moreover has a tendency to injure him in his trade or calling.

*Slander—Damages—Special damages.*

General damages are such as the law will presume to be the natural or probable consequence of the defendant's conduct. Such general damages will only be presumed where the words are actionable per se. If any special damage has also been suffered it should be set out in the pleadings, but should plaintiff fail in proving it at the trial, he may still resort to and recover general damages.

Special damage is such a loss as the law will not presume to have followed from the defendant's words, but which depends, in part at least, on the special circumstances of the case.

In an action to recover damages for slander where the charge was that plaintiff, a butcher, knowingly sold diseased meat, and the damage alleged was that he lost the trade of divers persons, and this is sufficiently averred in the statement, but not established by the evidence, plaintiff can recover general damages only, which, however, may be a substantial sum.

*Slander—Evidence—Witness.*

It is not competent in an action for slander for the plaintiff to repeat upon the witness stand the statements of his witness of what was said to the witness by the defendant. Proof that a witness has made statements out of court, consonant with his testimony, is sometimes admissible, but not in chief, nor until his veracity has been attacked.

*Slander—Mistake in charge.*

In an action for slander where the defendant did not swear that the charge that plaintiff sold diseased meat was true, but admitted that he did not know whether the plaintiff sold diseased meat or not, it is not strictly accurate for the court in its charge to say that defendant admitted that the charge was false.

*Slander—Evidence—Repetition of defamatory words.*

In an action for slander if the defendant states that he qualified his utterance of the defamatory words by the statement that he was repeating what was told him, a witness may be permitted to testify that he was present and heard a third party make the defamatory statements to the defendant.

Argued Nov. 12, 1900.   Appeal, No. 194, Oct. T., 1899, by defendant, from judgment of C. P. Lancaster Co., June T., 1897, on verdict for plaintiff in case of William Leitz v. John W. Hohman.   Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.   Reversed.

Trespass for slander.

The plaintiff's statement charged the following defamatory words :

" This Dutchman kills diseased cattle—he killed a calf with an abscess full of matter, his customers are all getting sick and are sending for me to furnish them meat—they can't eat his meat—they get sick on it."

At the trial when plaintiff was on the stand he was asked this question:

" Q. About April, 1897, did you hear of any slanderous reports?   A. Yes, sir.   Q. Said about you by Mr. Hohman? A. Yes, sir.   Q. State what they were."

Objected to by the defendant's counsel, unless it was communicated by Mr. Hohman.

" Q. Did such slanderous words come to your ears?   A. Yes, sir.   Q. What were they?   What did you hear? "

Objected to by the defendant's counsel.   Objection overruled.

Bill of exceptions signed, sealed and filed for the defendant. [1]

" A. It was in the middle part of April. I was driving in the east end of the town, and some people told me that Mr. Hohman— "

Objected to by the defendant's counsel.

" Q. Who told you? A. Mr. Jack Murray—that Mr. Hohman came to him at the corner of Fulton and Franklin streets, on the Sunday morning before Easter, and wanted him to buy meat of him. He said he ain't got no money, and he wouldn't do it. Then Mr. Hohman said he ought not to buy any meat off of me; I killed diseased cattle, and everybody that buys meat of me gets sick; and he called me a Dutch son-of-a-bitch. Q. He said, Mr. Hohman said, to Mr. Murray, that he should not buy meat of you, and you were killing diseased cattle? A. Yes, sir. Q. And everybody was getting sick that bought your meat. At the time you heard this, what was Mr. Hohman doing? A. He was in the butchering business at the same time."

Mrs. Rachael Steffy on her direct examination, being a witness called on behalf of the plaintiff, was asked this question :

" Q. Who was your butcher? A. Mr. Leitz. Q. What did he say about Mr. Leitz then, if anything? A. Well, he only wanted me to get meat of him; he said his meat wasn't good. Q. Whose meat wasn't good? Leitz's meat wasn't good? A. Yes, sir. Q. Did he say why? A. No, sir. Q. Did he say what was the matter with it? A. No, sir. He only said I should get of him; his meat wasn't good. That was all the conversation I had with him. Q. Did he say it made people sick ? "

Objected to by defendant's counsel.

Mr. Davis: I ask that that testimony be stricken from the record.

The Court: We will leave it in.

Bill of exceptions signed, sealed and filed for the defendant. [2]

When Frank G. Mattern, a witness called by defendant, was on the stand the following offer was made :

Defendant offers to prove by Frank G. Mattern, the witness on the stand, that he was present and heard George Ferguson

tell defendant, in April, 1897, that he had seen a calf with a sore or an abscess on its back, with a white substance or matter oozing from it; that the said calf was dressed and ready for sale.

Objected to by plaintiff; disallowed; defendant excepts. [3]

The court charged in part as follows:

[Now the defendant states he did not utter all the words charged in the plaintiff's statement. He says he said that he was told that Leitz had killed a calf that had an abscess on it as big as two fists, and a whole lot of corruption run out. He contradicts Murray, Price, Landis and Greiner as to the absolute statements made by them as to the killing and selling of diseased meat by the plaintiff, but he admits he had conversation with these parties.

It was shown that the defendant was told by Durnell and Ferguson that they had seen a calf hanging in Leitz's butcher shop with an abscess or lump, but outside of the testimony of these two persons, and you will remember it, there is no proof justifying the charge contained in the statement, and there is no proof that Leitz ever sold diseased meat to any one. In fact, it is not now pretended by the plaintiff, although stated so by his counsel in their addresses to you, for Hohman himself distinctly stated to you he had never said Leitz sold diseased meat. If Hohman did state what Murray, Price, Landis and Greiner testified to, and you find these are substantially the words laid in the plaintiff's statement, then he was guilty of a slander which he himself now admits was not true. The evidence of Durnell and Ferguson, communicated to Hohman, showing that this induced the suspicion, is in mitigation of damages, but not in bar of the action.] [4] . . . .

[You will also recollect that Leitz testified that he purchased this calf from Mr. Schultz, a respectable farmer; that it was perfectly sound; and he is corroborated in this by Schultz, Greiner and Schmidt. If this was so, it certainly made no difference where he sold the meat, because he would have a right to sell it wherever he chose. You will remember that Schmidt says he was present when Durnell and Ferguson came for the bones, and that he gave them a hook to weigh with. This they, however, deny.] [5]

[The plaintiff had a right of property in his trade, and no

man has a right, with impunity, to travel around the city spreading false and injurious rumors concerning that trade. If Hohman was so anxious that the public health should be cared for and maintained, would it not seem to have been the better plan for him to report the offense, which, he says, had come to his knowledge, to the board of health or other proper authorities, in order that it might have been properly investigated, instead of spreading a false story among Leitz's customers, as Murray, Price, Landis and Greiner say he did; this evidence, of course, and the veracity of these witnesses, being for you to pass upon? There is no question before you as to whether or not Leitz sold diseased meat. There is no such evidence before you, and Hohman does not claim that he did sell diseased meat.] [6]

[If you believe that the defendant, without qualification, wilfully and maliciously, or without proper inquiry, uttered the words charged in the statement, or substantially the words set forth therein, which he now admits were untrue—for the selling of diseased meat and not the killing of diseased cattle is the gist of the offense against the laws of the state—then you may find a verdict in favor of the plaintiff.] [7]

Defendant's points were as follows:

1. The words laid in the statement are not actionable per se, as they do not charge plaintiff with any infamous crime, the answer to which was as follows: *Answer :* This point is refused. Mr. Justice CLARK, one of the judges of our Supreme Court, in the case of Davis v. Carey, 141 Pa. 314, says: " Upon the question what words containing the imputation of a crime are actionable per se, the decisions in Pennsylvania are in some apparent confusion, but they are not contradictory. The course of decision is entirely consistent; the confusion arises from what has been said, not from what was decided. The true rule is that in case the charge, if true, would subject the party charged to an indictment for a crime involving moral turpitude or subject him to infamous punishment, then the words will be in themselves actionable, and it is not necessary that the offense imputed be infamous in the technical sense." If the words proven are substantially those charged in plaintiff's statement, they are actionable, and the plaintiff can recover such damages as the jury believe he has sustained, for not

only does the crime of selling diseased meat subject the offender to prosecution by indictment and possible imprisonment, but what can be more abhorrent to the public at large, or expose the person charged to public contumely, than that one has deliberately exposed for sale some article of food which may likely cause sickness and death ! [8]

2. There can be no verdict in favor of plaintiff for special damages, as none are properly laid in the statement, and there was no proof of any special damage.   *Answer :* It is true there is little evidence of special damages proven in this case ; but the words, if true, having a tendency to injure the plaintiff in his business, and subject him to criminal prosecution, and, perhaps, to imprisonment for violation of a public statute, passed in the interest of the public health, are actionable, and it is for the jury to pass upon them.   The point is, therefore, under the facts of this case, refused. [9]

Verdict and judgment for plaintiff.   Defendant appealed.

*Errors assigned* were (1–3) ruling on evidence, quoting the bill of exceptions.   (4–9) Above instructions, quoting them.

*I. C. Arnold* and *B. F. Davis*, for appellant.—The offer to prove that Ferguson, who testified he saw the diseased calf dressed and hanging in plaintiff's butcher shop, communicated that fact to the defendant.   It tended to rebut proof of malice and to corroborate the defendant in his testimony that what he had said had been told him.   It at least was evidence in mitigation of damages: Kennedy v. Gregory, 1 Binney, 88 ; Smith v. Stewart, 5 Pa. 372 ; Kellogg v. Cary, 3 P. & W. 102.

If the judge assume a fact which is not in evidence, the judgment must be reversed: Musselman v. East Brandywine, etc., R. R. Co., 2 W. N. C. 105.

In our opinion, no special damages were laid in the statement or proven : 2 Addison on Torts, sec. 1143.

The defendant merely repeated an alleged slander he had heard uttered by other parties.   He did not originate the charge. The plaintiff did not show that he sustained any injury or lost custom because the defendant repeated the alleged slander : Wallace v. Rodgers, 156 Pa. 395 ; Hallock v. Miller, 2 Barbour, 630 ; Cook v. Cook, 100 Mass. 194.

*J. W. Brown* and *D. McMillen,* for appellee.—Special damages were laid in the statement, although it is not necessary to aver special damages, and when the slander is spoken of a man's trade or profession, it so clearly tends to his injury that proof of special damage need not be offered: Price v. Conway, 134 Pa. 340; Beck v. Stitzel, 21 Pa. 522; Odgers on Libel & Slander *297; Andres v. Koppenheaffer, 3 S. & R. 255; Todd v. Rough, 10 S. & R. 18; Pollard v. Lyon, 91 U. S. 225; Dunnell v. Fiske, 52 Mass. 552; Davis v. Carey, 141 Pa. 314; Townshend on Slander and Libel, sec. 182.

OPINION BY RICE, P. J., February 14, 1901:

Mr. Justice CLARK, in an elaborate and convincing opinion reviewing the leading cases upon the subject of slander charging an indictable offense, approved the rule laid down in Brooker v. Coffin, 5 Johns. 190, saying that the cases in Pennsylvania are in accord with it, and that it is the true rule. It is as follows : " In case the charge, if true, will subject the party charged to an indictment for a crime, involving moral turpitude, or subject him to an infamous punishment, then the words will be in themselves actionable: " Davis v. Carey, 141 Pa. 314. It is for the court to decide whether the words laid in the plaintiff's statement are capable of the meaning ascribed to them by the innuendo, and for the jury to decide whether such meaning was truly ascribed to them. See Price v. Conway, 134 Pa. 340, and cases cited. The court committed no error in this regard and the verdict of the jury has established the fact that the defendant uttered the words with the meaning ascribed to them. To charge a butcher with knowingly selling diseased meat whereby his customers are being made sick is to impute to him an indictable offense and one involving moral turpitude in the ordinary and well understood meaning of those terms ; it moreover, has a tendency to injure him in his trade or calling. Applying the test of the rule above quoted, the learned judge was clearly right in refusing to charge that the words were not actionable per se, and he did not overstep the bounds of judicial propriety in stating in vigorous language the reasons why he could not so charge. But in answering the defendant's next point, ninth assignment, it seems to us that the distinction between the proof essential to the right of action, and the proof

essential to a recovery of special damages was lost sight of. " General damages are such as the law will presume to be the natural or probable consequence of the defendant's conduct. Such general damages will only be presumed where the words are actionable per se.   If any special damage has also been suffered, it should be set out on the pleadings, but should plaintiff fail in proving it at the trial, he may still resort to and recover general damages:" Odgers on Libel and Slander (Bl. ed.), *293.   On page 297, the same author says: "Special damage is such a loss as the law will not presume to have followed from the defendant's words, but which depends, in part at least, on the special circumstances of the case."   These rules are in accordance with our own decisions.   In Wallace v. Rodgers, 156 Pa. 395, a case where the words were actionable per se, and admittedly the plaintiff was entitled to recover general damages, Mr. Justice DEAN said: "But where special damage is claimed it should be distinctly averred, and where caused by the mere repetition of an accusation, the wrongdoing of defendant, as cause of the special injury, should be proven."   The cases cited by the plaintiff's counsel are not in conflict with this doctrine. All that they decide is that when words are spoken of another in the way of his or her trade or profession, an averment of special damage is not necessary to maintain the action.   Not one of them goes to the extent of holding that even in such a case special damages may be recovered without proof.   Under the pleadings in the present case, the plaintiff would have been entitled to recover special damages if the proofs had warranted it. Without such proof, the words being actionable per se, he was entitled to recover general damages, which might be a substantial sum; in other words, the jury were not bound to give nominal damages only: Tripp v. Thomas, 3 B. & C. 427; Odgers on Libel and Slander (Bl. ed.), *293; 13 Am. & Eng. Ency. of Law (1st ed.), 432.   But, although special damage, namely, that he lost the trade of divers persons who had been accustomed to buy meat from him, was sufficiently averred in his statement of claim, yet, as the proofs failed to sustain this averment, he could recover general damages only.   Therefore, the point should have been affirmed.   Whether or not the affirmance of the point would have made a difference in the verdict we can-

not say, but as it might have done so we are compelled to sustain the assignment.

We held in Dreibilbis v. Esbenshade, 6 Pa. Superior Ct. 182, that it is not competent in an action of slander for the plaintiff to repeat upon the witness stand the statements of his witness of what was said to the witness by the defendant. Proof that a witness has made statements out of court consonant with his testimony is sometimes admissible, but not in chief, nor until after his veracity has been attacked. See Quigley v. Swank, 11 Pa. Superior Ct. 602, Commonwealth v. Kay, 14 Pa. Superior Ct. 376, at p. 387, and cases there cited. No occasion had arisen, at the time it was offered, for the admission of the testimony embraced in the first assignment of error. It was, therefore, mere hearsay, and should have been excluded.

We think it altogether probable that the defendant's case was not harmed by the exclusion of the cumulative evidence of Frank G. Mattern as to what he heard George Ferguson tell the defendant (third assignment). But as the case must go back for a retrial, we remark that it was corroborative of the testimony of George Ferguson upon the same subject which was admitted. The fact testified to by Ferguson, and offered to be proved by Mattern, would not constitute a defense, but it might go in mitigation of damages, or at least be proper for the jury's consideration upon the subject of vindictive damages. Especially would this be true if, as the defendant alleged, he qualified his utterance of the defamatory words by the statement that he was repeating what was told him. If the defendant had attempted to prove general rumors in the neighborhood, a different question would be presented and a different rule would apply: Lukehart v. Byerly, 53 Pa. 418; Pease v. Shippen, 80 Pa. 513.

Except for the inadvertent expression that the defendant "admitted" that the charge testified to by the plaintiff's witnesses was not true, the instructions given in the general charge are free from substantial error. Whilst the defendant did not swear that the charge was true, but admitted that he did not know whether the plaintiff sold diseased meat or not, it was not strictly accurate to say that he admitted that the charge was false.

The other assignments do not seem to us to require particular notice, further than to say that we find no error therein calling for reversal. For the reasons above stated the first, third, fourth, seventh and ninth assignments are sustained. The second, fifth, sixth and eighth are overruled.

Judgment reversed and a venire facias de novo awarded.