# Binder v. Pottstown Daily News Publishing Company, Incorporated, Appellant.

*Libel—Pleading—Statement—Attaching copy of article to statement—Newspaper—Punitive damages.*

In an action of trespass against the proprietor of a newspaper to recover damages for libel, the form setting out the libelous words, by attaching a copy of the article in which they appear, to the statement, and making it part thereof, is open to criticism, but it does not constitute a substantial defect which can be complained of after pleading the general issue and going to trial on the merits.

In such a case where the headlines of the article are quoted in the statement, but the article itself is attached thereto, and the statement charges that the writing is libelous, the charges in the statement cover not only the headlines actually quoted therein, but also the article attached as an exhibit.

In an action for libel by one newspaper proprietor against another, where it appears that the article in suit was a long one, and embraced not only criticism of the paper itself, but charged that the news furnished by the plaintiff was fake news, that three men named had been grossly libeled by the plaintiff, and that the good reputation of the paper had been destroyed by the plaintiff, and that the latter was not responsible in a financial way, it is reversible error for the court not to instruct the jury to distinguish between such parts of the article as constitute a mere criticism of a thing, and such as either directly or indirectly are defamatory of the plaintiff personally.

Where such defamatory charges are made, the social relation and standing of the plaintiff, and that he has a family, may be considered by the jury.

It is not error for the court in such a case to refuse to permit the defendant's counsel to prove by cross-examination of the plaintiff that his newspaper circulation and his business had not been injuriously affected by the publication, where it appears that no evidence had been adduced by the plaintiff upon this subject, and the objection to the offer is met by a statement of the plaintiff's counsel, that plaintiff was not claiming special damages.

Where a libelous article refers to a person named, or is so written that it would reasonably be taken to refer to him, it establishes legal malice within the meaning of the third section of the Act of April 11, 1901, P. L. 74, and where this is the case, the jury may under the Act of May 12, 1903, P. L. 349, award punitive damages against the defendant.

412 BINDER v. DAILY NEWS PUB. CO., INC., Appellant.

The quality of an alleged libel, as it stands upon the record, either simply or as explained by averments and innuendoes, is a question of law for the court, and in civil cases the court is bound to instruct the jury as to whether the publication is libelous, supposing the innuendoes to be true. But there is a manifest distinction between instructing a jury that legal malice is to be implied from certain defamatory words, and instructing them as to the actual motive of the defendant in publishing them. It is therefore reversible error for the trial judge after saying that headlines were calculated to specially attract attention to add "the motive therefore was evidently to attract attention rather than to give information."

Justification cannot be considered as pleaded within the meaning of the Act of April 11, 1901, P. L. 74, when under the plea of the general issue an offer is made at the trial to prove the truth of any libelous statement. The plea of not guilty is not a conclusive admission of the falsity of the publication.

If it appears in the development of the plaintiff's own case that a particular severable statement contained in the publication is true, the defendant is not precluded by his plea of not guilty from having the benefit of the evidence in mitigation of damages, particularly where the statement if true, was proper for public information.

Argued Dec. 3, 1906. Appeal, No. 246, Oct. T., 1905, by defendant, from judgment of C. P. Montgomery Co., June T., 1904, No. 10, on verdict for plaintiff in case of William J. Binder v. Pottstown Daily News Publishing Company, Incorporated. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Libel to recover damages for libel. Before WEAND, J.

At the trial it appeared that the alleged libelous publication was as follows:

## "IF YOU SEE IT IN *THE LEDGER*, IT'S *NOT* SO.

"HOW A ONCE RELIABLE NEWSPAPER HAS GRADUALLY LOST ITS REPUTATION.

### "*CHEAP METHODS OF SECURING NEWS.*

"NEWS ARTICLES HAVE BEEN PRINTED WITHOUT MAKING ANY ATTEMPT TO VERIFY THEIR FACTS—HOW IT CAST REPROACH UPON THREE CITIZENS OF POTTSTOWN THROUGH CRIMINAL CARELESSNESS.

"For more than a score of years a small—and constantly

growing smaller—number of Pottstown people have looked up to the Daily Pottstown Ledger as being a journalistic paragon that could not, by any possible means, print a line that would not pass muster as being irreproachable as to morals and as veracious as the Bible. This reputation was gained for the Ledger as a weekly, under the editorship of Lewis Davis, one of the ablest editors that the Schuylkill valley ever saw. Since his death, however, William J. Binder, the present publisher, has been living upon the reputation made by the late Mr. Davis through many years of the most careful newspaper work, but in late years the faith of the readers of the Ledger has received numerous jolts.

" To put it plainly, it has been as unreliable as cheap newspaper hired men could make it. The brains of the former management have given place to a $7.50 a week handy man, who is expected to collect news, dun subscribers and advertisers for their overdue bills, solicit job work and calendar orders, help put up the mails, see the undertakers and doctors, and, in fact, many other duties that a newspaper-man could not be expected to do.

" The result of this policy of economy has been evident in its columns for several years. It has deliberately printed news without any attempts to verify the facts, depending upon the ' runner' and the telephones to get their local news. Perhaps the most flagrant example of inaccuracy and a libel upon the fair name of three reputable citizens, whose names happen to be John Levengood, was printed in their columns on Thursday.

" A man named George B. Levengood, residing at Bramcote, was arrested in the morning by detective ' Jack' O'Connor, charged with a serious offense. The Ledger's ' runner' heard that the man's name was Levengood, and without any attempt to verify either the name or facts, he rushed to the office, and the Ledger came out on Thursday afternoon and stated that ' John Levengood, of this town, was arrested this morning by Detective John O'Connor on a most serious charge, that of indecent assault.'

" There are three men in Pottstown bearing the name of John Levengood, all of whom are reputable citizens, and who have been grossly libeled by the Ledger in its criminal carelessness to verify the information it may have had before printing it.

Each one of them would have good cause for libel against the publisher of the Ledger were the latter responsible in a financial way. Common justice to the parties aggrieved should have prompted the publisher of the Ledger to print an apology yesterday in his columns, but not a word appeared.

"The readers of the Ledger were left under the impression that the news as printed in the Ledger was true, and innocent men were left under the shadow of suspicion of a serious offense. This was only in keeping with the policy of the publisher of the Ledger, who has repeatedly made false statements in his columns, and only retracted them in cases where he was forced to do so. A few of the many fake news items published in the Ledger during the past few months are given below."

The plaintiff was asked this question :

" Q. Mr. Binder, you are a man of family? A. Yes, sir."

The Court : I understand the objection is based upon the proposition that the article complained of as libelous refers only to the property of the plaintiff and not to him personally. The statement in the case alleges injury to the plaintiff in his character and reputation and also that it is a reflection upon his business. The statement starts out by giving certain headlines which are sufficient to call attention to the article itself. Now the statement here makes no further reference to the article than simply setting forth these headlines. The argument of the defendant's counsel might have some weight at this stage, that is, that the article was directed entirely against the paper and not against the individual; but after it sets forth these headlines, which were calculated to call attention to it, the plaintiff goes on by saying " which said article is set out at large and attached to and made a part of this statement." The whole article, therefore, becomes part of the statement, and in that article the plaintiff is named personally. Therefore, I think that the point of the objection is not well taken. The objection is overruled and an exception is noted for the defendant. Bill sealed. [1]

" Q. What is the circulation of your newspaper now? A. It don't show any loss—"

Mr. Larzelere: We are not attempting to show special damages; we don't propose to do that, and don't claim that, and this examination is objected to.

The Court: The objection is sustained. In this class of cases the plaintiff may be entitled to damages, although he does not show a penny in loss.

Judge Gordon: As to financial responsibility, we can't agree with your honor. It seems to me the plaintiff asks damages at the hands of the jury in the statement; damages to his newspaper, and it is averred in his statement to his business; and if we show his business has not been affected, the result would be for this jury to determine only the question of a technical right to a verdict.

The Court: There is no claim for special damages, and, therefore, you can't show that; so far as the case has progressed, if he recovers damages at all, it is simply as compensation for the character of the article.

(Discussion.)

The Court: The article having been exhibited to jury and not having shown a penny of loss, then the damages might be merely nominal.

Judge Gordon: We ask for an exception, your honor.

The Court: The objection is sustained, and an exception noted for the defendant; bill sealed. [2]

Judge Gordon: We now offer to prove by cross-examination that the circulation of plaintiff's paper has not been injuriously affected by this publication, and that his business has not been injuriously affected by the publication.

Mr. Larzelere: Objected to.

The Court: The objection is sustained; defendant excepts; bill sealed. [3]

The court charged as follows:

Gentlemen of the jury:—The plaintiff in this case is the publisher of a paper in the borough of Pottstown. The defendant also publishes a paper in the same borough. The plaintiff has claimed in this action that the defendant, in its paper, has published a false and defamatory article reflecting upon him personally, and also upon that of his paper. It is technically called an action of libel. It is in effect of a double character; that is, a libel against him individually and also against his property or business.

Now, the bill of rights provides that the printing press shall

be free to every person who may undertake to examine the proceedings of the legislature or any branch of government, and no law shall ever be made to restrain the right thereof, The free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty. It has been held that the freedom of the press is allowable in discussing the acts of our legislators and those who are in public life, and the conduct of our public officers. and the freedom also exists in the right of every newspaper to criticise every public officer, but this privilege must be exercised in certain ways. It must be done in a proper manner, for when made improperly the privilege is lost. [The make-up of this publication as shown by the headlines was sensational. The motive, therefore, evidently was to attract attention rather than to give information.] [4] Now you will have this publication before you; you will examine it, and it may assist you in determining what the result of your verdict shall be. You will examine it and ascertain whether the make-up is too sensational; whether it was done in a proper manner, and what its evident purpose was; this only for the purpose of determining what shall be the amount of the damages awarded. Any malicious publication, written, printed or painted, which by words or signs tends to expose a person to contempt, ridicule, hatred, or degradation of character, is a libel, and the person libeled may recover damages, unless it be shown that the publication was true, or that it was justifiably made. Now, we say that definition says " any malicious publication." Malice is said to be essential to an action for libel, but it is malice in a special and technical sense, which exists in the absense of lawful excuse, and where there may be no spite or ill-will, or disposition to injure others. Every publication having the other qualities of a libel, if willful and unprivileged, is in law malicious. The publication of words actionable in themselves is sufficient evidence of legal malice. Legal malice exists where a wrongful act is done intentionally. The proprietor of a newspaper, whether a natural person or a corporation, is liable for a libel contained in the paper, though without actual knowledge of the libel until after the publication. [Where the defendant published words which injured

the plaintiff's reputation he must be taken to have intended the consequences naturally resulting therefrom, and the question whether the defendant acted maliciously or not should not be left to the jury unless the occasion be privileged, and I charge you in this case the occasion was not privileged. Therefore, we have under the pleadings that this article is false, and the duty of the court to say to you that it is libelous.] [5]

[Now, the law is not unreasonable, because it provides under the act of 1901 that in all civil actions for libel the plea of justification shall be accepted as an adequate and complete defense, when it is plead and proven to the satisfaction of the jury under the direction of the court, as in other cases, that the publication is substantially true, and that it has not been maliciously or negligently made. Now in this case there is no plea of justification, and therefore the falsity of the charge is admitted, and the court says to you that it is libelous, and, that being the case, the only question before you is, what damages shall be awarded to the plaintiff.] [6] Now, damages are of two kinds: first, what are known as compensatory damages to the plaintiff for the wrong done. In many cases a man may be libeled, and yet not be able to say in dollars and cents that he has suffered any damages whatever; and the law, recognizing plaintiff's difficulty in such cases to prove actual damages, allows the jury to give such damages as in their opinion will compensate him for the loss that he has sustained; and where a libel charges a false defamatory charge or a malicious charge made against the individual, loss of reputation may be presumed by the jury. In this case, although the plaintiff has not shown to you in dollars and cents what he has lost, still you have the right to give him such amount as you think will compensate him for the injury that has been done him. [Now the injury as alleged here is the loss of reputation in his financial capacity and the future injury done to his business. You will take the article itself and find from its character what is the evident effect it must have had upon plaintiff's business as the publisher of a newspaper, and upon him personally.] [7] [Now, does it refer in any way to Mr. Binder personally? It is claimed that if this article is libelous at all, it is only libelous as against the newspaper, and that it cannot be construed to refer to him as an individual or

to injure him. If you take that view of it, and that it therefore refers entirely to the newspaper, and no loss having been shown, the jury could find that he would not be entitled to any damages. Now, referring to the article, we find that it states: " This reputation was gained for the Ledger as a weekly, under the editorship of Lewis Davis, one of the ablest editors that the Schuylkill valley ever saw. Since his death, however, William J. Binder, the present publisher, has been living upon the reputation made by the late Mr. Davis through many years of the most careful newspaper work, but in late years the faith of the readers of the Ledger has received numerous jolts." Now, here you will see that William J. Binder is charged with being the publisher and with publishing the paper in the manner indicated, and it is for you to say as to whether or not this is not a direct attack upon him.] [8] [Again, it is said: "There are three men in Pottstown bearing the name of John Levengood, all of whom are reputable citizens, and who have been grossly libeled by the Ledger in its criminal carelessness to verify the information it may have had before printing it. Each one of them would have good cause for libel against the publisher of the Ledger were the latter responsible in a financial way." Now, the first part actually charges William J. Binder as being the publisher, and mentions his name, and this latter part which I have just read to you says that as publisher of the Ledger he is not responsible in a financial way, or rather that "each one of them would have good cause were he responsible in a financial way." Therefore, it is for you to say whether it is not a direct attack upon Mr. Binder individually.] [9] The other parts of the article refer to the newspaper, and it is for you to say as to whether or not it has injuriously affected his business as publisher of the paper, irrespective and apart from any injury done to himself.

[Now, the law in these cases also allows what are called exemplary damages—damages in the nature of a punishment to the person who thus publishes a malicious libel, and this is done as much for the protection of the individual as it is to deter other persons from committing the same offense. Before allowing exemplary damages, you would have to determine from this article as to the motive which prompted it. Was it done with special malice against Mr. Binder and his paper? If

it were not; if it were a mere careless article, published not with the intention of doing any direct damage, but simply to injure the plaintiff in a sensational way, then you might, in your judgment, find whether exemplary damages should not be given, and, if they should, they should not be very high.] [10]

[Now, what was the motive in the publication of this article, or, rather, what was the direct effect of it? Was it to injure Mr. Binder personally, or was it to injure the paper, and was it to benefit the defendant? Could the motive have been by creating distrust as against the Public Ledger, thereby carrying off persons who would have done business with the plaintiff? If that was the motive, then the jury might find that the defendant ought to pay more than it otherwise would, if its motive was of that particular character; but in considering the question of damages, it is one that must be left to your good sense and good judgment.] [11]

Defendant presented these points:

1. The only libelous words charged by the plaintiff in this case are the following: " If you see it in the Ledger, it's not so. How a once reliable newspaper has gradually lost its reputation. Cheap methods of securing news. News articles have been printed without making any attempt to verify their facts—how it cast reproach upon three citizens of Pottstown through criminal carelessness." *Answer :* Refused. [12]

3. The words referred to relate to a thing only, to wit: a newspaper, and are not libelous, and your verdict, therefore, must be for the defendant. *Answer :* Refused. [13]

4. The plaintiff cannot recover in this action for a libel against him personally, as the alleged libelous words, set out in his statement, refer to the newspaper only and not to him personally. *Answer :* Refused. [14]

5. There is nothing in the language set out in plaintiff's statement of complaint which refers to plaintiff's financial responsibility, or contains any aspersion of his credit or financial worth, and you cannot find a verdict for the plaintiff upon any alleged libel of his financial credit and standing. *Answer :* Refused. [15]

.8. The plaintiff has by his testimony established the fact that his credit has not been impaired or his business injuri-

ously affected by reason of the article alleged as libelous, and you cannot, for this reason, award him any substantial damages.  *Answer :* Refused. [16]

9. There has been no evidence in the case from which you can find any express malice or other fact as a foundation for punitive damages.  *Answer :* Refused. [17]

10. The plaintiff is not entitled to recover any punitive damages, and none should be awarded in this case.  *Answer :* Refused. [18]

13. The plaintiff cannot recover a verdict at all in this case except for words published of and intended to refer to him personally.  *Answer :* Refused. [19]

14. If you find that the words complained of as libelous in this case did not refer to plaintiff personally, your verdict must be for the defendant.  *Answer :* Refused. [20]

15. Under all the evidence in the case your verdict should be for the defendant.  *Answer :* Refused. [21]

2. You cannot find a verdict for the plaintiff upon any other words than those referred to, and which alone are set out in plaintiff's statement of his case.  *Answer :* This is true, but the copy of defendant's paper attached to statement is part of it. [22]

You cannot find the verdict for plaintiff because of any words published which are a criticism only of the newspaper published by the plaintiff, and not of himself personally.  *Answer :* This is not true if the criticism is libelous. [23]

You cannot award plaintiff a verdict for any statement of fact in the alleged libel which you find from the evidence to be true.  *Answer :* This is refused, as by the pleadings the statement referred to is admitted to be false. [24]

You cannot award plaintiff any damages because of any statement made criticising the plaintiff's newspaper.  *Answer :* This is not true if the criticism is libelous. [25]

Verdict for plaintiff for $3,175.  Judgment was entered for $1,000.  Defendant appealed.

*Errors assigned* were (1–3) rulings on evidence, quoting the bill of exceptions ; (4–25) above instructions, quoting them.

*James Gay Gordon,* with him *Evans & Dettra,* for appellant. —It is not enough simply to file a copy of the publication com-

plained of, referring to it as " part of the statement: " Towns-
hend on Slander & Libel, sec. 334 ; Fritz v. Hathaway, 135 Pa.
274 ; Clark v. Lindsay, 7 Pa. Superior Ct. 43 ; Com. v. Bangs,
22 Pa. Superior Ct. 403 ; Genesee Paper Co. v. Bogert, 23 Pa.
Superior Ct. 23.

Any such criticism, even where malicious, can only become
actionable when it causes real damage.   In this case the paper
confessedly suffered no damage.

If the contention of the appellant, that there was no question
of personal libel at issue in this case, the court was clearly
wrong in permitting the jury to find punitive damages.   In
any event there was no such evidence of wanton and actual
malice in the case as would have justified the jury in finding
punitive damages : Neeb v. Hope, 111 Pa. 145.

There is no authority in any state or under any code for the
statement that the plea of " not guilty " admits the falsity of
the alleged libelous article.   It is the plea of the general issue
and denies the libel : Updegrove v. Zimmerman, 13 Pa. 619 ;
Sell v. Moyer, 9 Pa. Dist. Rep. 516.

When a judge gives his own views as to the weight and
sufficiency of the evidence, it is absolutely essential that the
jury shall be made to understand distinctly that the instruction
was not given as a point of law by which they are to be governed,
but a mere opinion as to the facts, to which they should give
no more weight than it is entitled to receive : Smith v. Times
Publishing Co., 178 Pa. 481 ; Burke v. Maxwell, 81 Pa. 139 ;
Ditmars et al. v. Commonwealth, 47 Pa. 335 ; Commonwealth
v. Orr, 138 Pa. 276 ; Spear v. R. R. Co., 119 Pa. 61.

*Larzelere, Gibson & Fox*, for appellee.—The social relations
and standing of plaintiff and that he has a family, may be con-
sidered : Klumph v. Dunn, 66 Pa. 141 ; Beehler v. Steever, 2
Whart. 313.

The title or heading of an article is a part thereof, and must
be considered in determining whether or not the publication is
libelous ; and it has frequently been held in actions based upon
publications in newspapers that the sting of the libel was con-
tained in the headlines : Hayes v. Press Co., 127 Pa. 642.

Where the language is clear and unambiguous the question
whether or not it is actionable is one for the court : Pittock v.

O'Neill, 63 Pa. 253; Collins v. Dispatch Pub. Co., 152 Pa. 187; Meas v. Johnson, 185 Pa. 12.

That appellee was declared irresponsible financially, was in itself libelous: Hayes v. Press Co., 127 Pa. 642; Wood v. Boyle, 177 Pa. 620; Price v. Conway, 134 Pa. 340; McIntyre v. Weinert, 195 Pa. 52; Holland v. Flick, 212 Pa. 201; Collins v. Dispatch Pub. Co., 152 Pa. 187.

The editor of a newspaper is not justified in calumnious attacks upon the private character of another editor: Stuart v. Lovell, 2 Stark. 93; 3 E. C. L. 331; Latimer v. Western Morning News Co., 25 L. T. (N. S.) 44.

Any written words published of another which have a tendency to injure the latter in his or her office, profession, calling or trade, are libelous, and in a civil action therefor it is not necessary that the declaration or statement of claim should contain an averment of special damage.

The same is ruled in McIntyre v. Weinert, 195 Pa. 52; Holland v. Flick, 212 Pa. 201; Price v. Conway, 134 Pa. 340.

In publications not privileged this malice is implied from the false and libelous language itself, and needs no additional proof to support an action for substantial damages: Hayes v. Press Co., 127 Pa. 642; Moore v. Leader Pub. Co., 8 Pa. Superior Ct. 152; Neeb v. Hope, 111 Pa. 145.

There was sufficient evidence to carry the case to the jury on punitive damages and support an award if it was made: Barr v. Moore, 87 Pa. 385; Palmer v. Leader Pub. Co., 7 Pa. Superior Ct. 594; Collins v. Dispatch Pub. Co., 152 Pa. 187; Stroud v. Smith & Son, 194 Pa. 502.

OPINION BY RICE, P. J., April 15, 1907:

A large part of the argument of appellant's counsel, and many of the assignments of error, are based entirely upon the proposition that the parts of the publication attached to and made part of the plaintiff's statement of claim which reflect on the plaintiff personally are not properly pleaded as libelous; that the words formally pleaded as libelous were a mere criticism of a " thing "—the plaintiff's newspaper—and constitute the only libel charged in the case. This is the first question to be considered. Its correct determination depends upon the

proper construction of the averments of the statement of claim. The statement of claim alleges that the plaintiff was proprietor and publisher of the " Daily Pottstown Ledger," a public newspaper, and that the defendant, the publisher of another newspaper, intending to injure the plaintiff and to deprive him of his good name and fame, and further intending to injure the reputation of his newspaper enterprise, falsely and maliciously published, in its daily issue of February 20, 1904, " of and concerning plaintiff and his said newspaper the following . . . . defamatory and malicious writing and libel, stating in large bold type headlines " (which are here quoted) " calculated to specially attract attention, and alleging incompetency and lack of reputation upon the part of plaintiff to conduct said newspaper, and that any printed news therein was unworthy of belief and distorted by petty prejudice ; and that said publisher, the plaintiff, was not financially responsible, and that his publication contained only fake news items, and on said account was entirely unworthy of public support, and that thereby it was fast losing the support of its friends and patrons ; all of which charges, insinuations and calumnies are false and known to be false and untrue by the defendant at the time of the publication of said false, malicious and libelous article, which said article is set out at large and attached to and made part of this statement."  Perhaps it would have been better form to set out the entire article, or that part of it claimed to be libelous, in the statement of claim, putting the innuendoes in immediate connection with the clauses to which they relate, but though the form of setting out the libelous words, by attaching a copy of the article in which they appear to the statement and making it part thereof by reference as above set forth, is open to criticism, we are of opinion that it does not constitute a substantial defect which can be complained of after pleading the general issue and going to trial on the merits.  Nor do we agree with the appellant's counsel in their contention that no matter contained in the article, except that contained in the headlines, is charged as libelous, and it seems to us that scarcely more is required to show the erroneousness of their construction of the statement than the extended quotation therefrom we have made. It shows that the " following " writing is alleged to be libel-

ous; that part of this writing consists of the quoted headlines, and that the entire false, malicious and libelous article is set out at large and attached to and made part of the statement. The manner in which the headlines are referred to tends to show that the plaintiff did not mean to charge that they constitute the entire libelous part of the writing, and this becomes quite clear when it is noticed that in specifying what the writing alleges against the plaintiff and his newspaper matters are mentioned which are not even indirectly charged in the headlines, but are alleged in the article of which the headlines form a part. The fair and reasonable construction of the statement is the same as if the entire article had been copied verbatim in the body of the statement immediately after the words " the following false, scandalous, illegal, defamatory and malicious writing and libel."

In view of the foregoing conclusion, it cannot be said that the words pleaded as libelous constitute a mere criticism of the plaintiff's newspaper, although some of the allegations of the publication may be so regarded. Speaking of these first, we refer for illustration to a paragraph near the end, which is susceptible of meaning only that the plaintiff's newspaper does not contain all the news, or that it is not a publication in which people expect to find the news. Prima facie this is not actionable defamation of the publisher; hence there was propriety in requesting instructions that the jury could not find a verdict for the plaintiff because of any words published which are criticism only of the plaintiff's newspaper, and not of him personally, and that the plaintiff could not recover except for words published of and intended to refer to him personally. As the counsel for the appellant says, here was a long article; in it there was a diversity of comment; some statements of actual facts; some mere criticism of a thing; some remarks, capable perhaps, of personal application. Therefore the requests were pertinent; they called for intructions that would lead the jury to distinguish between such parts of the article as constitute a mere criticism of a thing, and such as either directly or indirectly are defamatory of the plaintiff personally. We are of opinion that the points containing these requests should have been affirmed, and that the omission to affirm them was not cured by what was said in the general

charge, especially as in the portion of the charge quoted in the fifth assignment of error the learned judge instructed the jury that the article was libelous, without alluding to the distinction the jury would have been warranted in finding between its several parts. Therefore the fifth, nineteenth and twenty-third assignments of error sustained.

But as to the principal allegations of the publication we are unable to agree that they constitute mere criticism of a thing. Sometimes " an attack upon a thing may be defamatory of the owner of that thing, or of others immediately connected with it. But this is only so where an attack upon the thing is also an indirect attack upon the individual. If the words do not touch the personal character or professional conduct of the individual, they are not defamatory of him, and no action lies unless the words fall within the rules relating to slander of title. But to impute that the goods which the plaintiff sells or manufactures are adulterated to his knowledge, is a distinct charge against the plaintiff of fraud and dishonesty in his trade : " 1 Odgers on Libel and Slander, 30. This illustration of the general proposition that an attack upon a thing may be defamatory of the owner of that thing, or of others immediately connected with it, is pertinent here. To charge that a newspaper does not contain much news is not a reflection upon the personal character or the professional conduct of the publisher. The dissemination of news is not the only purpose for which newspapers are published. Some excel in this and some in other departments. But to charge that a newspaper " has been as unreliable as cheap newspaper hired men could make it ; " that " the brains of the former management have given place to a $7.50 a week handy man, who is expected to collect news, dun subscribers and advertisers for their overdue bills, solicit job work and calendar orders, help put up the mails, see the undertakers and doctors, and, in fact, many other duties that a newspaper man could not be expected to do ; " that " it has deliberately printed news without any attempt to verify the facts ; " that three men, giving their names, were grossly libeled by the newspaper " in its criminal carelessness to verify the information it may have had before printing " a certain article ; that many " fake news items " have been published in it, is, in effect, to charge the publisher with these

derelictions. And the article in question leaves no room for reasonable doubt that such was the intention of the defendant. It speaks of the good reputation the newspaper had gained under the former editor, and then goes on to say that " the present publisher has been living upon the reputation made by the late Mr. Davis through many years of the most careful newspaper work, but in late years the faith of the readers of the Ledger has received numerous jolts." In speaking of the above mentioned libel of the three men, the article declares : " Each one of them would have had good cause for libel against the publisher of the Ledger were the latter responsible in a financial way." A jury might well find that the defendant intended, not only to charge that the plaintiff had libeled these men, but to impute to him financial irresponsibility. Further, after stating that the plaintiff did not print an apology, as common justice would dictate, the article proceeds : " The readers were left under the impression that the news as printed in the Ledger was true, and innocent men were left under the shadow of suspicion of a serious offense. This was only in keeping with the policy of the publisher of the Ledger, who has repeatedly made false statements in his columns, and only retracted them in cases where he was forced to do so." It has been declared by high authority that a man who publishes a book " challenges criticism," and that he " submits himself to the judgment of the public," and the same is true of a man who publishes a newspaper. It is often difficult to draw the line where permissible, though severe, criticism of a book or a newspaper ends and defamation of the author or publisher begins ; but we need not go into further detail to show that some of the allegations of the publication pleaded as libelous go beyond mere criticism of the plaintiff's newspaper, and impute to him moral delinquency and violation of the criminal statute against libel, and that one of these allegations is susceptible of being construed by the jury as imputing to him financial irresponsibility. In such a case the social relations and standing of the plaintiff, and that he has a family, may be considered: Beehler v. Steever, 2 Whart. 313; Klumph v. Dunn, 66 Pa. 141. There was no error in the admission of the testimony embraced in the first assignment, or in the instructions complained of in the eighth, ninth, twelfth, thirteenth, four-

teenth, fifteenth, twenty-first, twenty-second and twenty-fifth assignments of error.    They are overruled.

The next question we are asked to decide is, whether it is not always competent for the defendant in a libel case to show, where it is possible, that no actual damage has been sustained. This question is supposed to arise upon the second and third assignments of error, in which complaint is made of the court's refusal to permit the defendant's counsel to prove by cross-examination of the plaintiff that his newspaper circulation and his business had not been injuriously affected by this publication.    It is to be observed that at this stage of the trial no evidence had been adduced by the plaintiff upon this subject and in stating his objection to the offers the plaintiff's counsel declare " we are not attempting to show special damages; we do not propose to do that, and we do not claim that."  In view of this express disavowal of the right to recover special damages, and of the state of the evidence, we are of opinion that the court committed no error in rejecting the points upon the ground of irrelevancy.    Even if there were doubt upon this point, the rulings were correct because the plaintiff did not testify in chief to anything to which this was relevant cross-examination.    The second and third assignments of error are overruled.

Before objection had been made to this line of cross-examination the plaintiff had testified in answer to questions of the defendant's counsel that he had not, to his knowledge, been refused any credit, nor suffered in his business any loss of credit, by reason of the article and this was made the basis of the defendant's eighth point, the refusal of which is the subject of the sixteenth assignment of error.    The point is somewhat broader than the plaintiff's testimony.    But assuming that the plaintiff had testified precisely as stated in the point, it was properly refused, if it was meant thereby—as seems to be the proper construction—that the fact that his credit had not been impaired or his business injuriously affected by the publication would prevent recovery of substantial damages. Where words are actionable as affecting the character of the plaintiff, he is always entitled to go to the jury on the question of general damages for the wrong done him in reputation, although no special damages has been alleged or proved : Meas

v. Johnson, 185 Pa. 12, and under the head of general damages the jury may award a substantial sum : Leitz v. Hohman, 16 Pa. Superior Ct. 276 ; Neeb v. Hope, 111 Pa. 145 at page 156. Therefore this assignment is overruled.

It is urged in this connection that there is inconsistency between the reasons given for rejecting the evidence referred to in the second and third assignments of error and the instructions upon the question of damages (seventh assignment) in which the learned judge submitted to the jury to find from the character of the article "what is the evident effect it must have had upon the plaintiff's business as a publisher of a newspaper." If this question in this form was to be submitted to the jury at all, we are of opinion that in order to prevent misapprehension in the minds of the jurors as to the pertinency of their finding upon the subject, their attention should have been called to the plaintiff's testimony just referred to and to his express disclaimer of right to recover special damages for injury to his business.

We find no error in the instructions quoted in the tenth and eleventh assignments as to punitive damages. The Act of July 1, 1897, P. L. 204 provided that in no civil action for libel should damages be awarded beyond just restitution for injury actually sustained, and this was construed to prohibit the allowance of vindictive, punitive or exemplary damages or smart money : Goebler v. Wilhelm, 17 Pa. Superior Ct. 432. This act was repealed by the Act of April 11, 1901, P. L. 74, the third section of which provides that no damages shall be recovered unless it is established to the satisfaction of the jury, under the direction of the court as in other cases, that the publication has been maliciously or negligently made, "but where malice or negligence appears such damages may be awarded as the jury shall deem proper." Where a libelous article refers to a person named, or is so written that it will reasonably be taken to refer to him, it establishes legal malice within the meaning of this section ; the act has not made any change in the law in this respect: Clark v. North American Co., 203 Pa. 346. Moreover, the Act of May 12, 1903, P. L. 349 provides that where the libelous matter has been given special prominence by the use of headlines and by other means calculated to specially attract attention the jury shall have the

right to award punitive damages. But irrespective of this act, if the jury found the facts recited in the instructions quoted in these two assignments, as they might, it was within their province to award punitive damages. Therefore these assignments are overruled.

The quality of an alleged libel, as it stands upon the record, either simply or as explained by averments and innuendoes, is a question of law for the court, and in civil cases the court is bound to instruct the jury as to whether the publication is libelous, supposing the innuendoes to be true: Collins v. Dispatch Pub. Co., 152 Pa. 187; Pittock v. O'Neill, 63 Pa. 253; Price v. Conway, 134 Pa. 340; Meas v. Johnson, 185 Pa. 12; Leitz v. Hohman, 16 Pa. Superior Ct. 276; Goebeler v. Wilhelm, 17 Pa. Superior Ct. 432. But there is a manifest distinction between instructing a jury that legal malice is to be implied from certain defamatory words, and instructing them as to the actual motive of the defendant in publishing them. It was proper for the learned judge to say to the jury that the headlines were calculated to specially attract attention. That was an obvious fact which could not be well disputed. Perhaps it would not have been out of place for him to express his opinion that the publication was sensational in its make-up, provided care was taken to make the jury understand that his opinion upon that matter was not binding upon them. But the added remark that " the motive, therefore, was evidently to attract attention rather than to give information " might have a very prejudicial effect upon the jury in determining the question of damages, and we are not convinced that it was counteracted by the instructions which followed. Therefore the fourth assignment is sustained.

The remaining question to be considered arises upon the sixth and twenty-fourth assignments. It is more clearly brought out in the point and answer quoted in the latter assignment, which were as follows: " You cannot award plaintiff a verdict for any statement of fact in the alleged libel which you find from the evidence to be true. *Answer :* This is refused, as by the pleadings the statement referred to is admitted to be false." It should be noted that the evidence here referred to is the plaintiff's testimony, for the defendant offered no evidence whatever. At common law the truth of any de-

famatory words was, if pleaded, a complete defense to a civil action for libel, and the defendant could, in mitigation of damages, justify as to one particular part of the libel, provided such part contained imputations distinct from the rest; but it was required that justification must be specially pleaded. The act of 1887, it is true, provides that the only plea to the action of trespass shall be " not guilty," but the common-law principle of pleading seems to have been restored by the act of 1901, which provides: " In all civil actions for libel the plea of justification shall be accepted as an adequate and complete defense, when it is pleaded and proved to the satisfaction of the jury, under the direction of the court as in other cases, that the publication is substantially true and is proper for public information or investigation, and has not been maliciously or negligently made." The form of pleading justification, under this act, whether by short plea or by a specification of particular matter under the plea of not guilty, is not necessary now to determine ; but we are not prepared at present to agree with the appellant's counsel that justification may be considered as pleaded within the meaning of the act when under the plea of the general issue an offer is made at the trial to prove the truth of any libelous statement. But the question before us is not what it was necessary for the defendant to do in order to introduce evidence of justification, but whether the plea of not guilty is a conclusive admission of the falsity of the publication. None of the cases go so far as that, although some of the authorities speak of the falsity being presumed if there be no other plea. They do unquestionably hold that if there be no other plea the falsity of the statement need not be proved by the plaintiff, but it seems unreasonable to hold that if it appears in the development of the plaintiff's own case that a particular, severable statement contained in the publication is true, the defendant is precluded by his plea from having the benefit of the evidence in mitigation of damages, particularly where the statement if true was proper for public information. We are of opinion that too much significance was given to the plea as admission of the falsity of the publication, and that the point should have been affirmed. But it would have been proper in affirming it to have cautioned the jury as to the necessity of the evidence showing the substantial truth of the

particular severable statement as a whole.   These assignments
are sustained.

Judgment reversed and venire facias de novo awarded.